No. 42,361

ELTA J. RILEY, *Appellee*, v. ROSS D. HOGUE, ELDEN L. BEEBE and JOSEPH G. TRINDLE, a partnership, d/b/a HOGUE, BEEBE & TRINDLE, C. P. A., *Appellants*.

(365 P. 2d 1097)

Opinion filed November 10, 1961.

*Byron G. Larson*, of Dodge City, argued the cause, and *James A. Williams*, of Dodge City, was with him on the brief for the appellants.

*Geo. R. Gould*, of Dodge City, argued the cause, and *George Gould, Jr.*, of Dodge City, was with him on the brief for the appellee.

*William M. Ferguson*, Attorney General, and *Robert E. Hoffman*, Assistant Attorney General, filed a brief *amici curiae*, in which *Z. Arthur Nevins*, County Attorney of Ford County, joined.

*C. L. Hoover* and *Robert A. Schermerhorn*, both of Junction City, filed a brief *amici curiae.*

The opinion of the court was delivered by

PRICE, J.: Were we to accept this case on its merits, the question presented would be whether a clerk of a district court is entitled to retain personally fees collected in naturalization and passport proceedings.

The action was brought for a declaratory judgment pursuant to the provisions of G. S. 1949, 60-3127, *et seq.* Highly summarized, the pleadings disclose the following:

The plaintiff is the duly elected, qualified and acting clerk of the district court of Ford county, and her petition alleges that defendants are certified public accountants and were employed by the board of county commissioners of Ford county to audit the books and records of offices and officers of the county for the year 1957, and that defendants made such an audit, included in which was an audit of plaintiff's office. It is further alleged that in defendant's audit report filed with the board of county commissioners certain statements were made by defendants concerning the fees of plaintiff which resulted in a difference of opinion as to the meaning of certain statutes, namely, G. S. 1949, 28-101, and G. S. 1959 Supp. 28-170.

The petition further alleges that plaintiff is entitled to retain and disburse, as provided by federal law, all fees collected by her for her service to the federal government in matters concerning naturalization and passport cases, whereas defendant accountants contend that such fees collected by her should be remitted to the treasurer of Ford county to become a part of the general fund of the county.

The prayer seeks a declaratory judgment finding and adjudging that such fees may be retained by plaintiff and disbursed as provided by federal law and regulations, and that they need not be remitted to the county treasurer, and that costs of the action be assessed to defendants.

Defendants' answer admits they are certified public accountants; that they were employed by the board of county commissioners of Ford county to audit the plaintiff's office for the year 1957, and that they made such audit in their capacity as certified public accountants. It is further alleged that under no circumstances are defendants entitled to any part of the fees involved in the action, and

that they have no interest in such fees or their proper disposition except as the same may be concerned in the proper discharge of their legal duties as certified public accountants.

The answer then demurs to the petition on the ground it fails to state a cause of action against defendants for the reason that any dispute between plaintiff and defendants amounts to a mere difference of opinion and does not constitute an actual legal controversy between the parties which may be determined in a declaratory-judgment action, and for the further reason that Ford county and the state, being the parties primarily and beneficially interested in the final determination of plaintiff's right to retain personally the fees in question, and thus being necessary parties—are not parties to the action.

The answer further alleges that the audit report prepared by defendants was made pursuant to certain mentioned statutory provisions and rules and regulations prescribed by the state budget director; that any opinion stated by them in their audit report on the subject of fees involved in the action was given in compliance with such statutes, rules and regulations, and opinions on the subject rendered by the office of the attorney general.

The prayer is that the action be dismissed on the ground there is no justiciable legal issue between the parties, or, in the event the action not be dismissed, for a declaratory judgment finding and adjudging that G. S. 1959 Supp. 28-170, and G. S. 1949, 21-1607, and other pertinent statutes and regulations, require that naturalization and passport fees collected by plaintiff in her official capacity as clerk of the district court be remitted by her to the county treasurer to become a part of the county general fund.

The reply was in the form of a general denial.

Upon the issues thus joined the parties proceeded to trial. Evidence, both oral and documentary, was received, and it also was stipulated that the 1957 audit report of plaintiff's office prepared by defendants contained the following statement:

"The Clerk of the District Court keeps for her services one-half of the naturalization fees and all of the passport fees. This is a violation of the provisions of Section 28-170 and 21-1607, 1949 G. S."

At the conclusion of the hearing judgment was rendered for plaintiff, holding that she was entitled to retain personally the fees in question, and it was further ordered that the costs of the action be taxed to plaintiff "and are a legal charge as expense of her office to Ford County."

The journal entry of judgment contains specific recitals that the demurrer contained in defendants' answer was overruled; that defendants' demurrer to plaintiff's evidence, on the ground it was insufficient to show a justiciable issue between the parties, also was overruled; that at all appropriate times throughout the hearing defendants raised the question whether the case was such that the declaratory-judgment statute was applicable, and that at all such times their contentions with respect to the question were overruled.

Their motion for a new trial being denied—defendants have appealed.

In their brief defendants state that, having gone through the expense of the trial and this appeal, they abandon the questions raised by their demurrer and suggest that the ultimate issue be decided by this court at this time.

With all due deference to the position thus taken, we nevertheless are of the opinion that the question—being one of jurisdiction—can be raised by this court even on its own motion.

The provisions of the declaratory-judgment act (G. S. 1949, 60-3127, *et seq.*) need not be set out, but it consistently has been held the act is available to a litigant only in cases of *actual controversy*, and that all persons interested in the controversy must be made parties. (*West v. City of Wichita*, 118 Kan. 265, syl. 2, 234 Pac. 978; *Williams v. Flood*, 124 Kan. 728, 729, 262 Pac. 563; *State, ex rel., v. Wyandotte County Comm'rs*, 128 Kan. 516, 520, syl. 2, 279 Pac. 1; *Garden City News v. Hurst*, 129 Kan. 365, 282 Pac. 720; *Kittredge v. Boyd*, 137 Kan. 241, 242, 20 P. 2d 811; *Kern v. Newton City Commissioners*, 151 Kan. 565, 572, 100 P. 2d 709, 129 A. L. R. 1156; *City of Cherryvale v. Wilson*, 153 Kan. 505, 509, syl. 1, 112 P. 2d 111; *Boeing Airplane Co. v. Board of County Comm'rs*, 164 Kan. 149, 155, syl. 2, 188 P. 2d 429, 11 A. L. R. 2d 350.)

In the Kittredge case it was said:

"Even in a case where a mere declaratory judgment is sought, an actual controversy must exist before this court or the district court would have jurisdiction to make a binding adjudication concerning it." (p. 242.)

In the Boeing case it was held:

"There must be at least two parties who can assert rights which have developed or will arise against each other before an actual controversy can exist which is justiciable under our declaratory judgment act." (syl. 2.)

In the case of *Garden City News v. Hurst*, above, plaintiff newspaper publishers brought a declaratory-judgment action against the probate judge of Finney county for the purpose of having a legal

construction placed on certain statutes as applied to a monthly publication meeting the requirements of the law as a newspaper in which legal publications could be made. The petition alleged that the probate judge denied that the paper was such a legal publication as was lawfully entitled to publish notices, and the plaintiffs contended that the actual effect of defendant probate judge's interpretation of the mentioned statutes resulted in the plaintiffs being deprived of their legal right to publish notices were it not for the mistaken interpretation by the defendant. The syllabus of the case reads:

"Where the publishers of a weekly newspaper make the probate judge the only defendant in an action for a declaratory judgment as to the interpretation of the statute giving the requirements of newspapers entitled to publish legal notices, alleging in the petition that the probate judge denies that their paper is a legal publication and lawfully entitled to publish such notices, and that he would not approve such if furnished in his court, and the answer admits that such is his interpretation of the law and his attitude, there exists between the plaintiffs and defendant no actual controversy, as is required by R. S. 60-3127 for a declaratory judgment."

In the course of the opinion it was said:

"The declaratory-judgment provision of our law being modern in its use, and an extension of judicial power, is always carefully safeguarded by the courts, and would in this case, as in all such, have been first considered without a suggestion from anyone. Even by agreement of the parties, jurisdiction under this act cannot be conferred." (p. 366.)

. . . . . . . . . . . . . .

"The first question for consideration in all cases of this kind is whether or not an actual controversy exists. It is very evident there is a difference of opinion, but that is not enough. How will it affect the probate judge if this case should be decided against him? The worst that could possibly result to him would be that he was mistaken in his opinion. That is hardly an actual controversy as intended by the statute. Plaintiffs reason out the actual effect on their side of the question, viz., that they are being deprived of their legal rights to legal publications which they might get for their newspaper by the mistaken interpretation and erroneous judgment of the probate judge. That may cause an actual deprivation, but it is not an actual controversy." (pp. 366, 367.)

. . . . . . . . . . . . .

"We can easily see how the plaintiffs herein are interested in having a favorable construction placed upon the statute, but no plausible reason or suggestion has been ventured as to the probate judge having any interest or any obligation, liability or privilege resulting from a decision in the matter involved. We therefore conclude that there exists between the plaintiffs and the probate judge no actual controversy as required by statute in order to authorize and justify the rendering of a declaratory judgment on the interpretation of R. S. 64-101 and 64-102." (p. 368.)

The foregoing reasoning is applicable to the present case. It is obvious that as between plaintiff clerk of the court and defendant certified public accountants there is merely a difference of opinion— but that is not enough to bring the matter within the purview of the declaratory-judgment act. Defendants are in no way beneficially interested in the question whether plaintiff is entitled to retain personally the fees in question. Our conclusion is that between plaintiff and defendants there exists no *actual controversy* as required by the declaratory-judgment act in order to authorize and justify the rendering of a declaratory judgment on the interpretation of statutes pertaining to the collection and disbursement of the fees in question.

The judgment is therefore reversed with directions to dismiss the action.