J. Courtney McGroarty, J.
In this action brought by a group of policyholders and contract beneficiaries to enjoin Health Insurance Plan of Greater New York (hereinafter HIP) from changing its contract with them and others similarly situated, plaintiffs move for a temporary injunction. ■
HIP is a nonprofit membership corporation organized under article IX-C of the Insurance Law which offers some 755,000 *675 subscribers fully prepaid comprehensive medical care through medical groups. These medical groups, consisting of partnerships of physicians, render basic and specialized care in a group setting to subscribers under a medical group agreement with HIP, the most recent agreement having expired on July 31,1971. In effect, HIP operates a group practice plan which enables subscribers to prepay for comprehensive medical care.
To better serve, subscribers and to upgrade service, while enhancing incentives for participating physicans, HIP developed a new program proposal for 1971, forming the basis for negotiations for a new agreement with its medical groups. Twenty-six groups, represented by two organizations, continue to oppose HIP’s new program proposal and as of now have no agreement with HIP. To their credit these medical groups continue to serve HIP subscribers without contract while this dispute pends, receiving payment for their services on a capitation basis as provided by the expired contract. Five other medical groups, however, serving about 185,000 subscribers, have agreed to a new contract, embodying HIP’s new 1971 program proposal.
Recognizing the strong resistance to its program proposal by the 26 medical groups, and the possibility that it might not be able to negotiate a satisfactory agreement wtih them, HIP prepared to deal with the problem by making appropriate preparations to protect subscribers. HIP decided that it would serve the best interests of subscribers to give them an opportunity to transfer to other medical groups in their area if the medical groups to which they belonged refused to serve them, or, if there were no such other groups available, to place them on an indemnity coverage plan until such time as HIP could obtain coverage for them through a selected medical group or an alternate medical group, such change to be effected by a proposed rider to their HIP policy. On July 1 direct policyholders and contractor groups were so notified by letter, but before HIP could also notify all individual subscribers it was stayed from proceeding further by the restraining order herein.
Under the proposed rider a subscriber unable to obtain services from his medical group by reason of termination of the medical agreement who is unable or unwilling to transfer to another medical group under contract with HIP may select the same or any other medical group or physician on an individual basis and will be indemnified according to a fee schedule. HIP proposes to set the fee schedule at the actuarial equivalent of present capitation payments to its medical gToups and at the indemnity schedules it now pays for medical services to some 5,000 sub *676 scribers in areas without medical groups under contract with HIP.
Plaintiffs object to the proposed rider, claiming that it substitutes indemnification payments on a fee schedule basis for each item of medical care for fully prepaid comprehensive medical care HIP is obligated to furnish. Plaintiffs argue that subscribers rely upon HIP for fully paid comprehensive medical care without further cost to them. If the proposed rider is implemented, doctors’ regular fees would be charged and the difference between fees charged and HIP’s fee schedule allowances would have to be paid by subscribers, thereby violating HIP’s policy agreement by substituting indemnification payments for prepaid comprehensive medical coverage. Plaintiffs say that, considering the accumulated burden of comprehensive damage that could result by reason of such contract breach, HIP might face insolvency.
Plaintiffs also urge that HIP’s insistence that contracting medical groups may not similarly contract with other carriers is illegal and violates section 340 of the General Business Law prohibiting restraint of trade and therefore jeopardizes continuation of medical care under such illegal contract. In view of the irreparable damages that plaintiffs claim may result, they ask for a temporary injunction restraining HIP until trial from implementing the proposed rider or in any other way changing present practice and procedures which have been followed for many years and which rights are guaranteed to them by their policies and contracts with HIP.
Plaintiffs bring this action on behalf of themselves and as a, representative class action on behalf of all other policyholders and contract beneficiaries similarly situated.
CPLR 1005 (subd. [a]) authorizes one or more persons to sue for the benefit of all “ Where the question is one of a common or general interest of many persons ’ ’. The action must involve an interest common to all members. In this case, some 185,000 policyholders and contract beneficiaries served by 5 medical groups that have contracted with HIP, have no interest in common with plaintiffs or others in enjoining implementation of the proposed rider, as they are not affected by it. In addition, many subscribers might well disagree with the action taken by these plaintiffs, perhaps preferring to have the benefit of the proposed rider to fall back on if their medical groups should be unable or unwilling to serve them. Not all subscribers are injured by the proposed rider— only those who may be in need of medical care during their policy term and are unable to obtain it on a fully prepaid basis. Each such wronged subscriber may deter *677 mine for .himself what remedy to seek. Separate wrongs to separate persons, though committed by' similar means and pursuant to a single plan, do not alone create a common or general interest in those wronged (Society Milion Athena v. National Bank, of Greece, 281 N. Y. 282; Brenner v. Title Guar. & Trust Co., 276 N. Y. 230). Class actions may not be maintained when the asserted wrongs are individual to the different persons and each aggrieved person may determine for himself the remedy he will seek and may be subject to a defense not' available to the others (Gaynor v. Rockefeller, 15 N Y 2d 120). These plaintiffs have no interest in any cause of action or recovery by others and it may well be that the remedy desired by other policyholders or beneficiaries differs from that sought here, i.e., to enjoin HIP from changing its contract regardless of whether it is able to continue to furnish fully paid comprehensive medical care through medical groups. This action deprives the other policyholders and beneficiaries of their choice of remedies (Onofrio v. Playboy Club of New York, 15 N Y 2d 740). The class action is improperly brought; it cannot stand.
Having determined that no class action lies, the question remains whether these plaintiffs may individually maintain this action for a permanent injunction. Viewing the-matter in that light, the question presented is whether these plaintiffs may, if HIP is unable to conclude a satisfactory agreement with the 26 medical groups and is therefore unable to fulfill its policy obligations, enjoin HIP from implementing an alternate plan. It is not certain that these plaintiffs may need medical care during their present policy terms or that HIP may be unable to provide fully prepaid medical care if the need arises. Nonetheless, plaintiffs ask that HIP be permanently enjoined from implementing the proposed rider, although there is no assurance that it may ever affect them.
. It is not sufficient to authorize an injunction that a violation of a naked legal right is threatened. There must be some special ground of jurisdiction and where an injunction is the final relief sought, facts entitling plaintiffs to the relief must be established. That plaintiffs may sustain financial loss does not entitled them to equitable relief and the mere allegation of serious or irreparable injury, apprehended or threatened, is insufficient. Neither injury to plaintiffs, inadequacy of the legal remedy, or any pressing or serious emergency, or other special ground of equitable jurisdiction, is shown (McHenry v. Jewett, 90 N. Y. 58).
Equity jurisdiction arises out of the inability of courts of law through the inflexibility of their rules and want of power to *678 adapt judgments to the special circumstances of cases. It is a cardinal rule that equity will not entertain jurisdiction where there is an adequate remedy at law, or grant relief unless to prevent serious and irreparable injury (Thomas v. Musical Mut. Protective Union, 121 N. Y. 45).
Such is not the case here. Plaintiffs may not have equitable relief. They have an adequate remedy at law. If the proposed rider results in damage to them, they have recourse at law. Not every apprehension of injury moves a court of equity. Only when irreparable injury is threatened and the law affords no adequate remedy will equity act (Kane v. Walsh, 295 N. Y. 198, 205).
Absent a showing that there is no adequate remedy at law and that serious and irreparable injury may result to these plaintiffs, the complaint falls. General allegations of possible serious and irreparable injury to undetermined subscribers and contract beneficiaries do not entitle these plaintiffs individually to enjoin HIP. That HIP may be unable to fulfill its policy obligations to them entitles them to damages in an action at law, only if and when the contract is breached and presents no such serious and irreparable injury as to require equity to intervene. Plaintiffs may not individually maintain this action and their complaint falls.
The second cause of action charges that HIP’s refusal to contract with medical groups similarly contracting with other insurance carriers violates section 340 of the General Business Law in that it establishes, or may establish, a monopoly, restrains or may restrain competition, and should therefore he enjoined. Not all restraints foster monopoly or restrain competition in the legal sense. HIP’s effort to upgrade service to subscribers by exercising a measure of control over its medical groups by refusing to contract with groups similarly contracting with other carriers is not necessarily violative of our monopoly laws or offensive to our public policy. HIP is concerned that its subscribers shall receive proper medical care and to that end may refuse to contract with medical groups that may be unable to furnish it. Groups that overload facilities are unable to provide proper care. HIP is not to be faulted for this laudable effort. Certainly these plaintiffs, subscribers and contract beneficiaries, cannot complain that HIP seeks to serve them better.
A motion for a temporary injunction opens the record and gives the court power to pass on the sufficiency of the complaint (Challenger v. Household Finance Corp., 179 Misc. 966, affd. 266 App. Div. 844). To obtain injunctive relief plaintiffs must state an actionable cause and even in the absence of a motion *679 to dismiss, a defective complaint may be stricken on a motion for an injunction pendente lite (Leonard v. Hancock Mut. Life Ins. Co., 118 N. Y. S. 2d 170, affd. 281 App. Div. 859).
Motion for preliminary injunction is denied, and on the basis of the record, judgment is directed in favor of defendant dismissing the complaint.